14 MAG 1996

ORIGINAL

Approved: _____
George D. Turner
Assistant United States Attorney

Before: THE HONORABLE MICHAEL H. DOLINGER
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                : **SEALED COMPLAINT**

    - v. -                             : Violations of
                                          18 U.S.C. §§ 1341, 1343,
JAMES BOZZUTO,                          : and 2
    a/k/a "Jim Bozzuto,"
                                        : COUNTY OF OFFENSE:
              Defendant.          NEW YORK
- - - - - - - - - - - - - - - - - - X

DOC # 1

SOUTHERN DISTRICT OF NEW YORK, ss.:

       CHRISTOPHER P. CIZIN, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service ("USPIS"), and charges as follows:

COUNT ONE
(Mail Fraud)

       1. From at least in or about January 2011, up to and including at least in or about December 2011, in the Southern District of New York and elsewhere, JAMES BOZZUTO, a/k/a "Jim Bozzuto," the defendant, did willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and would and did take and receive therefrom, such matter and thing, and would and did cause to be delivered by mail according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, a matter and thing, to wit, BOZZUTO caused money orders to be sent and received from victims through the United States mails based on

misrepresentations that the victims would receive financial assistance with housing rent payments.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT TWO
(Wire Fraud)

2. From at least in or about January 2011, up to and including at least in or about December 2011, in the Southern District of New York and elsewhere, JAMES BOZZUTO, a/k/a "Jim Bozzuto," the defendant, did willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BOZZUTO caused the dissemination over the Internet of false representations regarding low-income individuals' purported eligibility for rental assistance, and caused there to be interstate telephone communications involving victims and others, in furtherance and assistance of a scheme to obtain money fraudulently from low-income individuals based on such misrepresentations.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3. I have been a Postal Inspector with USPIS for approximately ten years. I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The FINOAH Scheme

4. Based on my personal participation in this investigation, I am aware that the scheme under investigation was designed to obtain money from low-income individuals in the United States, typically by fraudulently representing to such persons that they were eligible to receive financial assistance with their housing rent, but only if they first paid certain advance "fees." Specifically, I have learned the following:

   a. The defendant perpetrated this fraud through the operation of a fraudulent enterprise known as "Families in Need of Affordable Housing," or "FINOAH."

   b. The defendant falsely promised, through advertisements for FINOAH in newspapers and on the Internet, that if an individual with annual income below a specified amount completed an application and sent FINOAH certain "processing" or "enrollment" fees, the applicant would receive, if and once the application was "approved," financial assistance from FINOAH with rent payments.

   c. Based on these misrepresentations, numerous individuals in multiple states sent money orders through the United States mails to FINOAH, including to an address located in Manhattan, New York.

## The Investigation

5. As part of my investigation, I have reviewed advertisements placed in certain print and online publications, certain Internet web pages, and records obtained from a company that enables customers to purchase and register domain names for websites. I have also reviewed records maintained by the Florida Department of State. From these documents and records, I have learned the following:

   a. On or about January 13, 2011, the entity "FINOAH LLC" was registered with the Florida Department of State by "Jim Bozzuto" as the Registered Agent and CEO. FINOAH LLC's Articles of Organization bear the electronic signature "Bozzuto Jim."

   b. From in or about January 2011 through in or about December 2011, FINOAH solicited low-income individuals in newspapers and on the Internet.

3

     c. FINOAH advertised on a website with the domain name "rentaid.org." That website falsely represented that individuals earning under $30,000 per year were eligible to receive financial benefits from FINOAH of up to $750 per month to assist with rent payments. The rentaid.org website stated that if such an individual provided to FINOAH, either by telephone or through the mail, the application information specified on the website, and provided a $10 "processing" fee to FINOAH, the individual would receive monthly assistance benefits if the application was approved. The application form accessible on the website listed a return address for FINOAH located in Manhattan, New York (the "Manhattan Address"). Records obtained from a company that sells Internet domain names show that the domain name "rentaid.org" was purchased by JAMES BOZZUTO, a/k/a "Jim Bozzuto," the defendant, and lists the Manhattan Address as the address associated with the domain name.

     d. FINOAH placed advertisements in certain newspapers, such as America Classifieds. One America Classifieds advertisement, published on or about September 16, 2011, falsely represented that individuals earning under $30,000 per year were eligible to receive financial assistance with rent payments, and listed the website www.rentaid.org.

     e. FINOAH also advertised on the social media website Facebook.com. A FINOAH web page on Facebook falsely represented that individuals earning under $22,000 per year were eligible to receive financial assistance from FINOAH with their rent payments. The web page stated that if an individual was approved for the program, the individual was required to pay FINOAH an "enrollment" fee of $299.

     6. As part of my investigation, I have spoken with individuals who sent to FINOAH, through the United States mails, money orders payable to FINOAH. I have also reviewed mailing records and records of bank accounts into which such money orders were deposited. From those documents and interviews, I have learned the following:

     a. Between in or about January 2011 and in or about December 2011, hundreds of money orders payable to FINOAH, principally in the amounts of $10 and $299, were deposited in bank accounts in the names of "Jim Bozzuto" and FINOAH. The aggregate amount of such money orders was at least approximately $9,518.

    b. The records for one such bank account show that it was opened in Florida on or about January 19, 2011 in the name of "FINOAH LLC," with "Jim Bozzuto" as a manager and signatory on the account ("Account A"). The records for another such account show that it was opened in Manhattan, New York on or about July 15, 2011 in the name of "FINOAH LLC" by "Jim Bozzuto," who identified himself as the managing member of FINOAH LLC ("Account B").

    c. On or about November 8, 2011, I interviewed an individual living in Nebraska ("Victim-1"). From this interview, I learned that Victim-1 had read an advertisement for FINOAH in a certain publication. Based on the representation in the advertisement that Victim-1 was eligible for the purported rental assistance program, Victim-1 mailed two money orders to FINOAH, one in the amount of $200 and the other in the amount of $99. The $200 money order was subsequently deposited in Account A. From my review of a Better Business Bureau Complaint Form filed by Victim-1, I learned that Victim-1 received a phone call from a person identifying herself as a FINOAH representative, who informed Victim-1 that she qualified for FINOAH's purported rental assistance program. Victim-1 never received any financial assistance from FINOAH with rent payments. When Victim-1 called FINOAH to inquire, Victim-1 spoke to an individual who identified himself as "Jim Bozzuto." "Bozzuto" told Victim-1, in substance and in part, that if Victim-1 was upset about not receiving any payments, she should sue him.

    d. On or about December 29, 2011, I interviewed an individual living in Texas ("Victim-2"). From this interview, I learned that Victim-2 had read an advertisement for FINOAH in a certain publication. Victim-2 called FINOAH and spoke to a person who said Victim-2 was pre-approved for the purported rental assistance program and needed to send $10 for a "credit check." Victim-2 mailed a money order to FINOAH for $10. The money order was subsequently deposited in Account B. Victim-2 never received any financial assistance from FINOAH with rent payments.

    e. On or about April 30, 2012, I interviewed an individual living in Georgia ("Victim-3"). From this interview, I learned that in or around September 2011, Victim-3 visited a website for FINOAH. Based on the representation on the website that Victim-3 was eligible for the purported rental assistance program, Victim-3 mailed a money order for $10 to FINOAH at the Manhattan Address. The money order was subsequently deposited in Account B. Victim-3 never received any financial assistance

5

from FINOAH with rent payments. Victim-3 further stated that Victim-3 placed telephone calls to FINOAH and left voicemail messages, but did not receive any response.

    f. During the course of this investigation, I interviewed four of the numerous other individuals who mailed money orders to FINOAH ("Victim-4" through "Victim-7"). Each of Victim-4 through Victim-7 informed me, in substance and in part, that he or she sent a money order to FINOAH in order to participate in the purported rental assistance program, and that he or she never received any financial assistance from FINOAH with rent payments.

    g. From my review of mailing records and bank account records, I have learned that over two hundred individuals, including Victim-1 through Victim-7 above, sent money orders to FINOAH that were subsequently deposited in Account A or Account B. For example, on or about September 9, 2011, an individual residing in Georgia ("Victim-8") mailed a money order for $10 to FINOAH at the Manhattan Address, which was subsequently deposited in Account B. On or about September 26, 2011, an individual residing in Louisiana ("Victim-9") mailed a money order for $10 to FINOAH at the Manhattan Address, which was subsequently deposited in Account B.

    7. During the course of this investigation, I have not learned of any individual actually receiving any financial assistance with rent payments from FINOAH.

WHEREFORE, deponent respectfully requests that JAMES BOZZUTO, a/k/a "Jim Bozzuto," the defendant, be arrested and imprisoned or bailed, as the case may be.

_____
CHRISTOPHER P. CIZIN
POSTAL INSPECTOR
U.S. POSTAL INSPECTION SERVICE

Sworn to before me this
9th day of September, 2014

_____
THE HONORABLE MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7